

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00096-CV

_____

MARIE GRAVES, Appellant

V.

DJO, LLC, Appellee

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. 20-3562-462

Before Birdwell, Bassel, and Wallach, JJ.
Opinion on Rehearing by Justice Birdwell

**OPINION ON REHEARING**

This is an interlocutory appeal from the denial of Marie Graves's special appearance.[1] Graves contends that she did not waive her special appearance by filing a motion for sanctions, as the trial court found. She also asserts that she did not have minimum contacts with Texas that would have otherwise justified the denial of her special appearance. Because we agree on both accounts, we dismiss the cause for want of jurisdiction.

## I. BACKGROUND

In July 2018, Graves's then-employer DJO, LLC announced it was moving its corporate headquarters from California to Lewisville, Texas. Graves declined an offer to transfer from California to Texas. During her departure from DJO, she negotiated an agreement that provided for severance pay, benefits, and the release of any claims she had against DJO.

From December 2019 to April 2020, Graves sent DJO a series of demand letters in which she claimed employment discrimination, and she threatened to sue in California. Rather than be sued in California, DJO seized the initiative and sued Graves in Texas district court for declaratory relief and breach of the release agreement. Graves

---

[1]Appellee DJO, LLC has filed a motion for rehearing. We deny the motion for rehearing, but we withdraw our September 30, 2021 opinion and substitute the following in its place. DJO also filed a motion for en banc reconsideration. We deny that motion as moot.

filed a special appearance challenging the trial court's personal jurisdiction over her. The court granted the special appearance and dismissed the case.

DJO moved for new trial. Graves opposed the motion for new trial and moved for sanctions, alleging that DJO's petition was frivolous insofar as its allegations related to personal jurisdiction were completely baseless. The court granted a new trial and set aside the dismissal.

Afterward, the parties continued to dispute whether Graves's special appearance should be granted. In December 2020, the court reversed course and granted the special appearance once more, dismissing the case with prejudice.

DJO again moved for a new trial or, alternatively, a modification of the judgment to dismissal without prejudice. After the case was transferred to another district court, Graves again moved for sanctions, though she stipulated to modifying the judgment to a dismissal without prejudice. So the trial court denied Graves's motion for sanctions and modified the judgment to dismissal without prejudice.

DJO then filed yet another motion for new trial, in which it argued that when Graves sought sanctions, she had thereby invoked the Texas trial court's jurisdiction and made a general appearance that waived the issue of personal jurisdiction. The trial court agreed and, once and for all, denied Graves's special appearance, citing our opinion in *Composite Cooling Solutions, L.P. v. Larrabee Air Conditioning, Inc.* as support. No. 02-17-00006-CV, 2017 WL 2979918, at *1 (Tex. App.—Fort Worth July 13, 2017,

3

no pet.) (mem. op.).  Graves appeals.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7).

## II.  STANDARD OF REVIEW

In a challenge to personal jurisdiction, the plaintiff and the defendant bear shifting burdens of proof.  *Old Republic Nat'l Title Ins. v. Bell*, 549 S.W.3d 550, 559 (Tex. 2018).  The plaintiff bears the initial burden of pleading allegations that suffice to permit a court's exercise of personal jurisdiction over the nonresident defendant.  *Id.*; *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016).  To determine whether the plaintiff satisfied its pleading burden and to determine the basis for jurisdiction alleged by the plaintiff, a court considers the allegations in the plaintiff's petition as well as those in its response to the defendant's special appearance.  *Am. Refrigeration Co. v. Tranter, Inc.*, No. 02-15-00265-CV, 2016 WL 5957018, at *3 (Tex. App.—Fort Worth Oct. 13, 2016, no pet.) (mem. op.); *accord Madison Dev. Grp. LLC v. Mattress Firm, Inc.*, 608 S.W.3d 376, 388–89 (Tex. App.—Houston [1st Dist.] 2020, no pet.).  Once the plaintiff has met this burden, the defendant then assumes the burden of negating all potential bases for personal jurisdiction in the plaintiff's pleadings.  *Searcy*, 496 S.W.3d at 66.

The ultimate question of whether a court has personal jurisdiction over a nonresident defendant is a question of law we review de novo.  *Old Republic*, 549 S.W.3d at 558.  When, as here, the trial court does not issue findings of fact and conclusions of law, we imply all relevant facts necessary to support the judgment that are supported by evidence.  *Id.*; *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013).

4

We may review these findings for legal and factual sufficiency. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

### III. WAIVER OF SPECIAL APPEARANCE

To begin, Graves challenges the trial court's conclusion that she waived her special appearance by moving for sanctions. Graves asserts that she did not make a general appearance because her motion for sanctions was consistent with her special appearance argument that the trial court lacked personal jurisdiction over her; according to Graves, she sought sanctions because DJO's petition was so devoid of any basis for personal jurisdiction that DJO's invocation of the trial court's jurisdiction was frivolous.

Under Rule 120a, a properly entered special appearance enables a nonresident defendant to challenge personal jurisdiction in a Texas court. Tex. R. Civ. P. 120a; *Arnold v. Price*, 365 S.W.3d 455, 458 (Tex. App.—Fort Worth 2011, no pet.). Strict compliance with Rule 120a is required, and a nonresident defendant will be subject to personal jurisdiction in a Texas court if the defendant enters a general appearance. *Arnold*, 365 S.W.3d at 458. Rule 120a provides that "[e]very appearance, prior to judgment, not in compliance with this rule is a general appearance." *Id.* (quoting Tex. R. Civ. P. 120a(1)).

A party enters a general appearance and waives a special appearance when it violates Rule 120a's "due-order-of-pleading" requirement. *Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 305 (Tex. 2004); *see SBG Dev. Servs., L.P. v. Nurock Grp., Inc.*, No. 02-11-00008-CV, 2011 WL 5247873, at *2 (Tex. App.—Fort Worth Nov. 3, 2011, no pet.)

(mem. op.). This requirement mandates that a special appearance be filed "prior to a motion to transfer venue or any other plea, pleading or motion." *Exito Elecs.*, 142 S.W.3d at 305. Furthermore, Rule 120a incorporates a "due-order-of-hearing" requirement, which provides that a special appearance motion "shall be heard and determined before a motion to transfer venue or any other plea or pleading may be heard." *SBG Dev.*, 2011 WL 5247873, at *2 (quoting Tex. R. Civ. P. 120a(2)).

A party also enters a general appearance "when it (1) invokes the judgment of the court on any question other than the court's jurisdiction, (2) recognizes by its acts that an action is properly pending, or (3) seeks affirmative action from the court." *Exito Elecs.*, 142 S.W.3d at 304 (citing *Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998)). Under this principle, the ultimate "test for a general appearance is whether a party requests affirmative relief inconsistent with an assertion that the trial court lacks jurisdiction." *Arnold*, 365 S.W.3d at 459 (citing *Dawson-Austin*, 968 S.W.2d at 323); *see Exito Elecs.*, 142 S.W.3d at 305; *Nationwide Distrib. Servs., Inc. v. Jones*, 496 S.W.3d 221, 227–28 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (collecting examples of actions that do not constitute a general appearance under this principle).

Graves did not violate either of these principles such that she would have entered a general appearance. First, it is undisputed that Graves satisfied the due-order requirements for the pleading and hearing of her special appearance. Graves filed the special appearance and litigated it to completion before she ever filed her request for sanctions. *See Jackson v. Hoffman*, 312 S.W.3d 146, 151–52 (Tex. App.—Houston [14th

6

Dist.] 2010, no pet.) (concluding that because the due-order requirements were observed, a motion for sanctions was not a general appearance); *Xenos Yuen v. Fisher*, 227 S.W.3d 193, 199 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (same).

Second, Graves's motion for sanctions was not "inconsistent with an assertion that the trial court lack[ed] jurisdiction." *See Arnold*, 365 S.W.3d at 459. The grounds for Graves's motion for sanctions were the alleged frivolousness of DJO's bid to establish personal jurisdiction; Graves argued that because DJO's suit was so devoid of any basis for personal jurisdiction, DJO's suit should be sanctioned for baseless pleadings. *See* Tex. Civ. Prac. & Rem. Code Ann. § 10.004. The motion for sanctions thus acted as an extension of the special appearance, and one that was fully consistent with Graves's assertion that the trial court lacked jurisdiction.

Multiple courts have held that when a motion for sanctions is consistent with a special appearance, litigation of the sanctions issue does not offend Rule 120a or constitute a general appearance. For instance, in *Brady v. Kane*, a specially appearing defendant moved for sanctions because the plaintiff had allegedly pleaded "false jurisdictional facts to avoid dismissal and prolong the litigation," and within the motion, the defendant continued to assert that the Texas court lacked jurisdiction. No. 05-18-01105-CV, 2020 WL 2029245, at *8 (Tex. App.—Dallas Apr. 28, 2020, no pet.) (mem. op.). On appeal, the court observed that the motion for sanctions was consistent with the special appearance, and "[a] specially appearing party will not . . . waive the

7

jurisdictional challenge by seeking affirmative relief consistent with the special appearance." *Id.* at *5, *8.

Similarly, in *Carone v. Retamco Operating, Inc.*, a plaintiff moved for sanctions due to discovery abuse by the defendants, and Carone, a specially appearing codefendant, resisted the motion. *See* 138 S.W.3d 1, 8–9 (Tex. App.—San Antonio 2004, pet. denied), *as supplemented on denial of reh'g* (Apr. 28, 2004). The *Carone* court noted that discovery, in general, is consistent with a special appearance under Rule 120a, which "specifically contemplates ongoing discovery by both the party challenging jurisdiction and the party invoking it." *Id.* at 9. The opinion endorsed Carone's argument that there was no general appearance because the sanctions issue was "an extension of the discovery process" in which Carone was permitted to engage under Rule 120a. *Id.* Nothing about Carone's litigation of the sanctions issue was inconsistent with his assertion that the trial court lacked jurisdiction, the court held. *Id.* at 8–9.

And in *First Oil PLC v. ATP Oil & Gas Corp.*, the court of appeals determined that the dividing line between permissible and impermissible sanctions motions is drawn according to their consistency with and relation to the special appearance. 264 S.W.3d 767, 780 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). The court concluded that there was no general appearance where the defendant filed a motion to strike that was "entirely related to the motion for continuance of the special appearance hearing." *Id.* The court distinguished this scenario from a prior case, which held that when a defendant requested sanctions that were unrelated to the special appearance and

8

the discovery therein, it constituted a general appearance. *Id.* (distinguishing *Shapolsky v. Brewton*, 56 S.W.3d 120, 140 (Tex. App.—Houston [14th Dist.] 2001, no pet.)).

Here, as in *Brady*, *Carone*, and *First Oil*, Graves's motion for sanctions was entirely related to and in accordance with her special appearance.

That accordance distinguishes our case *Composite Cooling*, which the trial court relied upon in denying Graves's special appearance. 2017 WL 2979918, at *3. There, the defendant prevailed on a special appearance against the plaintiff's declaratory-judgment action, and he then asserted a claim for attorney's fees premised on the very statute he had argued the trial court was without jurisdiction to apply. *Id.* We reasoned that by invoking the plaintiff's declaratory-judgment action as a source of attorney's fees, the defendant had recognized that the action was validly pending. *Id.* He had also demanded affirmative relief inconsistent with his assertion that there was no jurisdiction to hear the action: if, as the defendant claimed, no declaratory-judgment action had been properly pending, then the trial court could not have granted a judgment in the defendant's favor for attorney's fees as an equitable remedy under the same statute. *Id.*

Unlike *Composite Cooling*, Graves's motion for sanctions did not undermine her special appearance. Indeed, the common thread that runs through both documents is Graves's assertion that the trial court lacks jurisdiction.

Furthermore, we find ourselves in agreement with Graves's argument that treating a motion for sanctions predicated upon a frivolous, groundless, or false jurisdictional pleading as a general appearance would likely encourage, not discourage,

9

the very type of forum shopping that special-appearance practice is intended to avoid. It is the public policy of this state to discourage parties and their counsel from invoking the jurisdiction of Texas courts for an improper purpose, such as harassment, unnecessary delay, or needlessly increasing litigation expenses, without a reasonable basis in the law and without an evidentiary foundation. *See* Tex. Civ. Prac. & Rem. Code Ann. § 10.001[2]; *see, e.g., Corea v. Bilek*, 362 S.W.3d 820, 825–27 (Tex. App.—Amarillo 2012, no pet.).[3] To hold that motions for sanctions predicated upon frivolous, groundless, or false jurisdictional pleadings constitute general appearances would remove an enforcement arrow from a trial court's jurisdictional inquiry that is contemplated by Texas public policy. *See In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997) (orig. proceeding) (upholding trial court sanctions against attorneys for forum-shopping misconduct constituting an abuse of the judicial process); *In re Boehme*, 256 S.W.3d 878, 882–83 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding) (observing that "Texas courts have recognized an important public policy against forum shopping" and

---

[2]*Gotham Ins. Co. v. Warren E & P, Inc.*, 455 S.W.3d 558, 564 (Tex. 2014) ("[T]he public policy of the State is reflected in its statutes.").

[3]Texas courts are not only permitted to enforce this policy sua sponte, they may also rely upon the motions of parties who are offended by baseless pleadings, with enforcement under either scenario potentially taking the form of an award of attorney's fees as a sanction. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 10.002, .004. Had the trial court concluded sua sponte that DJO's jurisdictional pleadings were groundless, frivolous, or false, and had the court awarded Graves attorney's fees as a sanction, it could not be said that Graves entered a general appearance by accepting such relief.

10

noting that "attorneys who abuse the legal process—as through improper forum[]shopping—may be sanctioned").

We therefore hold that Graves did not enter a general appearance when she moved for sanctions. We sustain Graves's waiver issues.

## IV. MINIMUM CONTACTS

We next take up Graves's personal-jurisdiction issue, in which she argues that she lacked minimum contacts with Texas, such that the trial court could not have otherwise denied the special appearance on the basis that a Texas court may properly assert personal jurisdiction over her. Graves maintains that she is a California resident and that her interactions with this state have been negligible.

## A. Applicable Law

Texas courts have personal jurisdiction over a defendant when the Texas long-arm statute grants jurisdiction and the exercise of jurisdiction comports with federal and state constitutional guarantees of due process. *Searcy*, 496 S.W.3d at 66. Texas's long-arm statute stretches as far as due process will allow, so federal due-process requirements shape the contours of Texas courts' jurisdictional reach. *Id.*

A state's exercise of jurisdiction comports with federal due process if (1) the nonresident defendant has "minimum contacts" with the state and (2) the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Cornerstone Healthcare Grp. Holding, Inc. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 70 (Tex. 2016) (cleaned up) (quoting *Walden v. Fiore*, 571 U.S. 277, 283, 134 S. Ct. 1115, 1121

11

(2014)).  A defendant establishes minimum contacts with a forum when it purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.  *Moncrief Oil*, 414 S.W.3d at 150.  Three primary considerations underlie the purposeful-availment analysis:  (1) only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or third person; (2) the defendant's acts must be purposeful and not random, isolated, or fortuitous; and (3) the defendant must seek some benefit, advantage, or profit by availing itself of the forum such that it impliedly consents to suit there.  *Cornerstone*, 493 S.W.3d at 70–71.  Although physical presence in the forum is a relevant contact, it is not a prerequisite to jurisdiction.  *Id.* at 71 (quoting *Walden*, 571 U.S. at 285, 134 S. Ct. at 1122).

Minimum contacts may create either general or specific personal jurisdiction.  *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016).  A court has general jurisdiction over a nonresident defendant whose affiliations with the state are so continuous and systematic as to render it essentially at home in the forum state.  *Daimler AG v. Bauman*, 571 U.S. 117, 127, 134 S. Ct. 746, 754 (2014).  For an individual such as Graves, the paradigm forum for the exercise of general jurisdiction is the individual's domicile.  *Id.* at 137, 134 S. Ct. at 760.  When a court has general jurisdiction over a nonresident, it may exercise jurisdiction "even if the cause of action did not arise from activities performed in the forum state."  *TV Azteca*, 490 S.W.3d at 37 (quoting *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010)).

12

"Unlike general jurisdiction, which requires a more demanding minimum contacts analysis, specific jurisdiction may be asserted when the defendant's forum contacts are isolated or sporadic, but the plaintiff's cause of action arises out of those contacts with the state." *Spir Star*, 310 S.W.3d at 873 (cleaned up). To assess whether there is specific jurisdiction, we focus on the relationship among the defendant, the forum, and the litigation. *Id.* Specific jurisdiction is appropriate when (1) the defendant's contacts with the forum state are purposeful, and (2) the cause of action arises from or relates to the defendant's contacts. *Id.* Parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 105 S. Ct. 2174, 2182 (1985); *Moncrief Oil*, 414 S.W.3d at 151. Where individuals purposefully derive benefit from their interstate activities, it may well be unfair to allow them to escape having to account in other states for consequences that arise proximately from such activities. *Burger King*, 471 U.S. at 473–74, 105 S. Ct. at 2183.

## B. Discussion

It is undisputed that Graves's contacts with Texas were not so systematic and continuous that she was essentially at home here for purposes of general jurisdiction. Rather, the question is whether a Texas court may properly exercise specific jurisdiction over her.

To that end, DJO's petition and response to the special appearance alleged the following facts pertaining to Graves's contacts with Texas:

- In July 2018, DJO announced that it was relocating its headquarters from California to Lewisville, Texas.

- DJO moved Graves's position to its Texas headquarters, but after visiting the state, Graves declined to relocate.

- By February 2019, DJO had completed the move to Texas.

- Graves's managers were relocated to Texas, and she continued to communicate with them daily from California as part of her job duties.

- After Graves declined to relocate, her employment with DJO terminated in June 2019.

- Around the same time, she negotiated a settlement and release agreement with a DJO employee located in Austin, Texas, and the release was signed by an Austin-based employee.

- Graves knew that the settlement agreement was to be performed—i.e., that her severance payments would be paid—by a Texas company.

- Once Graves raised the prospect of employment litigation, her attorney sent demand letters to DJO in Texas, thereby breaching the settlement agreement.

We conclude that these jurisdictional facts do not establish minimum contacts. As for the negotiation of a settlement with a Texas employee and the performance of the settlement in Texas, we agree with the First Court of Appeals's analysis in *Wellness Wireless, Inc. v. Vita*, in which it rejected a similar attempt to establish minimum contacts

14

via a settlement agreement. No. 01-12-00500-CV, 2013 WL 978270, at *12 (Tex. App.—Houston [1st Dist.] Mar. 12, 2013, no pet.) (mem. op.). According to that opinion, the allegation that the plaintiff's end of a settlement was partially negotiated by a Texas-based board member did not show that the defendant purposefully availed himself of the privilege of conducting activities in Texas. *Id.* Moreover, the fact that the plaintiff would perform its part of the settlement in Texas did not establish minimum contacts either; relying on such a fact as a basis for minimum contacts would "impermissibly shift our focus from the relationship among the defendants, the forum, and the litigation, to the relationship among the plaintiff, the forum, and the litigation." *Id.*; *see Grupo Mex. S.A.B. de C.V. v. Mt. McKinley Ins. Co.*, No. 13-17-00134-CV, 2020 WL 486501, at *7 (Tex. App.—Corpus Christi–Edinburg Jan. 30, 2020, pet. denied) (mem. op. on reh'g) (similar).

Furthermore, though Graves visited Texas and had work contacts with managers based in this state, these contacts have nothing to do with the settlement agreement at the root of DJO's suit. *See M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 887–88 (Tex. 2017) (concluding that Texas contacts did not establish minimum contacts because they were unconnected to the settlement agreement on which the plaintiff's suit was based). Finally, the fact that Graves's attorney sent demand letters to Texas is not, without more, sufficient to satisfy due process. *Compare Sussman v. Old Heidelburg, Inc.*, No. 14-06-00116-CV, 2006 WL 3072092, at *3 (Tex. App.—Houston [14th Dist.] Oct. 31, 2006, no pet.) (mem. op.) (concluding that the

sending of a demand letter to a person in Texas was not enough, along with other *de minimis* litigation contacts, to justify specific jurisdiction),[4] *with Nev. Nat'l Advert., Inc. v. Silverleaf Resorts, Inc.*, No. 05-16-00694-CV, 2017 WL 655949, at *8 (Tex. App.—Dallas Feb. 17, 2017, no pet.) (mem. op) (holding that sending a demand letter, paired with six other forms of purposeful availment from which the plaintiff's suit arose, was sufficient to establish minimum contacts).

We therefore hold that DJO failed to establish that Graves had minimum contacts with Texas. We sustain Graves's personal-jurisdiction issue, which renders it unnecessary to consider her remaining issues.

## V.    CONCLUSION

Graves has eliminated both of the grounds on which the trial court might have denied the special appearance: as Graves showed, she lacked minimum contacts with Texas, and she did not waive the right to complain about the dearth of contacts. We therefore vacate the trial court's order denying the special appearance and dismiss the cause for want of personal jurisdiction. Tex. R. App. P. 43.2(e).

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered:  November 4, 2021

---

[4]*See also Estate of Hood*, No. 02-16-00036-CV, 2016 WL 6803186, at *6 (Tex. App.—Fort Worth Nov. 17, 2016, no pet.) (mem. op.) (approving and applying *Sussman*'s holding).